**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                      )
JOHN DOE, JANE DOE, and               )
DAVID DOE,                            )
                                      )
                  Plaintiffs,         )
                                      )        Civil Action
v.                                    )        No. 19-cv-12293-PBS
                                      )
NEWTON PUBLIC SCHOOLS and             )
the BUREAU OF SPECIAL EDUCATION       )
APPEALS OF THE MASSACHUSETTS          )
DIVISION OF ADMINISTRATIVE LAW        )
APPEALS,                              )
                                      )
                  Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

July 27, 2020

Saris, D.J.

This case involves a former student at Newton North High School ("NNHS") who is autistic and suffered from suicidal ideation after his sophomore year. The student (David Doe) and his parents (John and Jane Doe) contend that Newton Public Schools ("Newton") failed to reimburse them for a placement in a private school in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, and M. G. L. c. 71B. Newton took the position before the Bureau of Special Education Appeals of the Massachusetts Division of Administrative Law Appeals ("BSEA") that its proposed

1

accommodations, including a program at the high school named "LINKS," met the student's needs. The student and his parents bring this action against Defendants Newton and the BSEA, seeking judicial review of a final decision and order rendered by the BSEA.

Now, the Does seek to supplement the record with: (1) an affidavit from Plaintiffs' previous attorney who litigated before the BSEA; (2) redacted Individualized Education Programs ("IEPs") for other students in the LINKS program; (3) the complete July 6, 2017 letter from Mr. Doe to the Lurie Center, which was partially read at the administrative hearing; and (4) two Newton school calendars. Defendants have assented to the last request but oppose the others.

After hearing, the Court **ALLOWS** the admission of the attorney's affidavit only insofar as it recounts statements at unrecorded hearings; **DENIES** Plaintiffs' request to compel production of peer IEPs and to submit related expert testimony; **ALLOWS** the admission of the Lurie Center letter only to the extent consistent with the doctrine of completeness; and **ALLOWS** the admission of the 2017-2018 Newton Public Schools Calendar and the 2017-2018 NNHS daily and weekly block schedule.

## BACKGROUND

The following facts drawn from the voluminous administrative record are relevant to the present dispute over

the request for additional discovery and supplementation of the
record.

## I.   **Newton North High School**

In 2015, David Doe entered NNHS for ninth grade with a
primary diagnosis of autism, demonstrating moderate need for
support services. Newton provided David with an Individualized
Education Program ("IEP") in order to provide him with a Free
Accessible Public Education ("FAPE") under the IDEA. David's
2015-2016 IEP described David as a "very bright student" with
"inconsistent cognitive skills [ranging] from borderline to high
average." Administrative Record ("A.R.") IV: 1178. "Socially and
emotionally, [David] present[ed] as a lonely [and] unhappy"
person who "struggle[d] with interpersonal relationships" and
self-esteem. A.R. IV: 1178. The IEP Team noted David was
"vulnerable to acts of bullying." A.R. IV: 1190. He was placed
in a "full inclusion" educational environment, where special
education services "outside the general education classroom"
would be given "less than 21% of the time." A.R. IV: 1191.

David's 2016-2017 IEP noted a low level of need for
services for tenth grade, and he maintained his full inclusion
placement. In March 2017, David's teachers noted that his
performance had worsened over the year, despite his dedication
to his studies. In response, David's parents requested that he
be prevented from participating in honors-level courses in the

next academic year. They also requested that NNHS terminate his special support services besides testing accommodations, as David had become "highly resistant" to receiving advice from professionals or admitting his need for them. A.R. IV: 1327.

On March 8, 2017, David's IEP Team convened for an annual review meeting to create his IEP for eleventh grade, 2017-2018. The resulting 2017-2018 IEP maintained David's "full inclusion" special education placement with a low level of need for services. David was to receive social pragmatics services at a frequency of one 30-minute session per month and one 15-minute session per five-day cycle.

On March 23, 2017, David was admitted to Riverside Community Care for an assessment related to suicidal ideation. On June 22, 2017, following a supplemental IEP Team meeting, Newton proposed a revised IEP and placement for 2017-2018. In addition to the social pragmatics sessions, Newton proposed adding one-hour academic support sessions with a special education teacher to occur four times a week, as well as a fifteen-minute consultation per month. David was assessed to be at a slightly higher level of need, requiring two to five hours of services per week. David's placement was kept as a full inclusion program at Newton.

On July 14, 2017, David presented to the Lurie Center for Autism at the Massachusetts General Hospital ("Lurie Center")

for a psychiatric consultation related to his active suicidal ideation. On July 19, 2017, the Does informed Newton via email that David was receiving inpatient psychiatric care at the North Shore Medical Center. They reported that he had been suffering from bullying at NNHS. The Does also stated that David was "adamantly opposed to enrolling at NNHS this fall," and that they "foresee as quite unlikely [David]'s enrolling at NNHS for his junior year." A.R. IV: 1497. Dean Scott Heslin requested a meeting to discuss the bullying allegations and transfer, but the Does declined due to David's unstable condition. On August 3, 2017, the Does repeated their belief that David should not continue at NNHS, and they stated that they were considering alternative options such as transferring to Newton South High School ("NSHS").

On August 9, 2017, David was discharged from McLean Southeast Adolescent Residential Program ("McLean"), where he had been transferred a few weeks earlier. A summary letter from his McLean providers noted diagnoses of major depressive disorder, generalized anxiety disorder, and mixed obsessional thoughts and acts. David had made "[l]ittle progress" during his inpatient stay due to "serious emotional difficulties and thought rigidity," particularly concerning school performance and suicide. A.R. IV: 1505 (emphasis omitted). David's providers at McLean assessed that he would "require extensive therapeutic

support in order to be able to access the academic curriculum at any level." Id. They recommended that David be "considered for services offered at a therapeutic school" that could provide "intensive interventions," such as "a program with experience in working with teens with high functioning Autism spectrum disorder and ongoing mood crises." Id.

On August 18, 2017, the Does rejected the 2017-2018 IEP and placement proposal and requested a meeting to discuss the rejection, stating that "[David] has been hospitalized in pediatric psychiatric facilities this summer. We believe that his needs require an appropriate therapeutic placement for his continued schooling." A.R. IV: 1382-83, 1483-84. Newton and the Does scheduled a meeting to review the rejected IEP on August 31, 2017.

On August 29, 217, a letter from Franklin Academy informed the Does that David had been accepted into its residential program. An invoice for the year's tuition was issued on August 30, 2017. According to the academic calendar, school was scheduled to begin on September 4, 2017.

On August 31, 2017, the Does and educational advocate Teresa Sauro met with the Newton IEP team. Newton proposed that David participate in the LINKS program ("LINKS") at NNHS for the 2017-2018 school year. During the meeting, Newton provided the Does with two handouts describing the LINKS program. One handout

describes LINKS as providing a "highly supportive and flexible environment to support students with emotional disabilities." A.R. IV: 1567. The other states that LINKS "supports students with chronic attendance problems." A.R. IV: 1568. The Does later informed their attorney, Lillian Wong, that they were skeptical of LINKS because "the program is a big pullout, [David] has been stigmatized by past pullouts . . . in [David]'s mind, this stigmatization is what causes him to be bullied and is thus what causes his consideration of suicide." A.R. IV: 1565. The Does believed LINKS would likely intensify David's suicidal thoughts. At the August 31, 2017 team meeting, the Does and Sauro stated their intent to place David at Franklin Academy.

On September 7, 2017, Newton informed the Does that it did not intend to support their request for reimbursement or funding associated with David's unilateral placement at Franklin Academy. Newton furthermore advised that, as a result of the "recent changes in [David]'s school presentation, and in an effort to gain further information regarding [David]'s current educational profile and needs, the district is also proposing to conduct an extended evaluation of [David] in a 45-day assessment day program." A.R. IV: 1573. Newton requested that the Does sign a release to accept referral packets to potential 45-day assessment programs.

On September 8, 2017, Newton forwarded a new IEP proposal which included "counseling support in the LINKS program, increased Speech and Language service and Academic Support." A.R. IV: 1588-90. Counseling was to take place twice a week, academic support classes four times per week, and social pragmatics sessions once a week. David would otherwise "remain in classes at his academic level." A.R. IV: 1589. Dean Heslin later clarified at the BSEA hearing that David was to receive "the support and the counseling in the LINKS program, not the academic courses." A.R. II: 551-552. Counseling would have included individual and group counseling, and the academic support provision would have been conducted with other students in LINKS.

On October 17, 2017, the Does rejected the September 8, 2017 IEP proposal. In a letter to Newton, Wong stated that placement in LINKS would not meet David's needs because David "would continue to receive minimal services and remain in a full inclusion placement," "[e]ven if David's IEP was amended to include core academic classes within the LINKS program," LINKS courses would not be academically challenging for David; and LINKS "appears focused on addressing the needs of truants and not the needs of motivated students with autism." A.R. IV: 1617. Wong also stated that Newton's 45-day assessment proposal was "too late," as it was "not appropriate to remove [David] from

the current setting where he is stabilized and receiving the
support he needs," and David had already been "extensively
evaluated" by his medical providers. A.R. IV: 1618.

The Does retained a neuropsychologist, Jason McCormick,
Psy.D., to evaluate David from October 2017 through March 2018.
Dr. McCormick's report of April 17, 2018 described David as
presenting with "an emotional disability characterized by major
depression and generalized anxiety disorder." A.R. IV: 1681,
1686. Dr. McCormick stated that David required "a school program
offering small class sizes (i.e., no more than 8 students per
class), placement among peers with similar profiles, and
consistent use of language-based teaching techniques," as well
as teachers who are "trained and experienced in working with
students with executive function, social, and emotional
vulnerabilities." A.R. IV: 1683. Dr. McCormick also opined that,
given David's social limitations, he required placement in a
residential program where he could receive social instruction
throughout the entire day.

On April 25, 2018, the Does convened with the Newton IEP
team to review David's placement at Franklin Academy and discuss
proposals for 2018-2019. Newton's proposed IEP placed David at a
separate public day school, stating that "all IEP services
should be provided outside the general ed. classroom and in a
separate school that only serves students with disabilities."

A.R. IV: 1717. On June 26, 2018, the Does rejected this proposed IEP and placement, relying upon Dr. McCormick's determination that David "requires a residential placement specializing in meeting the needs of students with mild autism, social/emotional challenges, and emotional disabilities." A.R. IV: 1717, 1724-27.

## II.  **Procedural History**

On January 3, 2019, Wong filed a hearing request with the BSEA on behalf of the Does. The Does requested, inter alia, a determination that Newton's proposed IEPs for 2017-2018 and 2018-2019 violated David's rights under the IDEA and M.G.L. c. 71(B); an order directing Newton to create an IEP placing David at Franklin's residential program and to assume all costs associated with that placement; and an order for Newton to reimburse the Does for the cost of David's attendance at Franklin from August 2017 to present. On January 18, 2019, Newton filed a response to the Doe's hearing request, denying that it had failed to provide David a FAPE and requesting an order precluding the Does from seeking reimbursement. See 20 U.S.C. § 1412(a)(10)(C)(iii).

Hearing Officer Catherine Putney-Yaceshyn scheduled the hearing to take place May 20-22, 2019. On March 7, 2019, Newton filed objections to the Does' request for discovery concerning the IEPs of non-party students enrolled in the LINKS program. Newton based its objections on protecting the privacy of those

students. It also stated that the peer IEPs were not relevant to the Plaintiffs' claims, as "NPS proposed a 45-day assessment in a therapeutic placement within days of the proposed IEP and that is the placement that is before the Hearing Officer to determine if it provides FAPE." A.R. I: 44.

According to the Does, on March 27, 2019, the parties participated in a prehearing conference during which the Hearing Officer "declined to rule on whether the Links program was relevant to the dispute. Instead, she informed the parties that the relevance of the Links program would be decided as a matter of fact at the hearing." A.R. I: 62.

On May 10, 2019, Wong filed a motion to compel discovery and requested a hearing on the matter. The motion stated that "the IEPs of the peers in the proposed placement for Student at the time [the Plaintiffs] made their unilateral placement is highly relevant to the current dispute." A.R. I: 62. The Does further argued that the 45-day assessment proposal violated 603 CMR 28.00, which allows Districts to propose an extended evaluation only when there is insufficient information to create an IEP. Finally, the Does pointed out that the other students' IEPs could be appropriately redacted to protect privacy.

On May 13, 2019, the Hearing Officer conducted an unrecorded hearing on the Does' motion to compel. Wong has now submitted an affidavit detailing her memory of the rulings at

that hearing. According to Wong, the Hearing Officer stated she
would rule against the motion to compel and asked Wong, "Do you
want me to write something up or will you withdraw the motion?"
Dkt. 37 at 11. Wong's affidavit further states that the Hearing
Officer came to this determination because she "adopted
[Newton's] reasoning that the relevant program was the 45-day
assessment and not the" Links program. Id. at 10. Counsel for
Newton, who was present at this hearing, contests this
assertion. She states that the Hearing Officer "did not
explicitly state she would rule against the Plaintiffs' Motion
but raised concerns about the timing of the motion as well as
the relative weight of the peer IEPs in the overall
determination of FAPE." Dkt. 46 at 5.

On May 16, 2019, Wong sent the BSEA an email withdrawing
the motion to compel "[b]ased on our conference call earlier
this week." A.R. I: 126. In the same correspondence, Wong
proposed that the Hearing Officer consider at the hearing
"[w]hether the IEP and placement offered by NPS for [David] at
the time of the unilateral placement were reasonably calculated
to provide [] him with a free, appropriate public education."
Id. On May 17, 2019, Newton's counsel provided a proposed
statement of issues which stated, as an initial question,
"[w]hether all actions taken by NPS, including the programs and
services proposed by NPS, and including but not limited to IEPs

and proposals for Extended Evaluations in therapeutic program settings, for the relevant time period (March 8, 2017-present) were reasonably calculated to provide Student with FAPE in the least restrictive environment." A.R. I: 132.

The first day of the hearing took place on May 20, 2019. Upon commencing the hearing, the Hearing Officer stated:

> "The issues to be decided in this case are the following: Whether the proposals made by the Newton Public Schools during the time period from March of 2017 through April of 2018 . . . were reasonably calculated to provide the Student with a free, appropriate public education in the least restrictive environment; and if not, whether the Parents are entitled to reimbursement for the unilateral placement of the Student at the Franklin Academy."

A.R. II: 283-84. The Hearing Officer identified similar issues as relevant for April 2018 through June 2019. Both the Does and Newton addressed Newton's 2017-2018 "full inclusion placement" proposal as well as the "extended evaluation" proposal during their opening arguments. A.R. II: 301-02, 306-07.

During the hearing, Mr. Doe was cross-examined regarding a July 6, 2017 letter he had written to the Lurie Center. In that letter, he wrote that David had not reported any acts of bullying to school officials or his parents during the 2016-2017 school year, and that the acts David reported to his parents after school ended did "not seem to be overt." A.R. II: 420. Newton's attorney read such portions out loud and questioned Mr.

13

Doe about them, but the letter itself was not submitted into evidence.

In their written closing argument, the Does reiterated that Newton's 2017-2018 and 2018-2019 IEP proposals were not reasonably calculated to provide David a FAPE. In particular, they argued that the August 2017 IEP proposal was insufficient because "it continued to provide minimal and insufficient services that largely ignored [David]'s emotional disability, required [David] to receive all his academic instruction in the generalized education setting without any specialized supports or services, and continued to include only a trivial amount of social skills instruction." A.R. I: 234-35. Regarding the LINKS program specifically, the Does contended that "[w]hile Newton asserts it proposed placement in the Links 'program,' Newton actually proposed a full inclusion placement at NNHS. What Links would have actually provided Michael was extremely limited and did not meet his needs." Id. at 235. The Does stated that "[t]he 'addition' of the Links program did not actually result in any changes to [David's] IEP service delivery or placement," as David would only have taken academic support within the LINKS program, and "Newton's own teachers worried that academic support could not do a 'miracle' and allow [David] to be able to access his general education classes." A.R. I: 236-37. The Does also viewed the August 2017 IEP proposal as inappropriate

because it sought to keep David at NNHS, despite his aversion to returning.

Regarding the September 2017 IEP proposal for a 45-day assessment program, the Does argued that this proposal did not provide a FAPE because "Massachusetts special educational regulations allow for extended evaluations only when the team finds they have insufficient information to draft a complete IEP," and yet Newton claimed it had adequate information to present a full IEP in August 2017; the only new information provided between the August 2017 and September 2017 IEP proposals was that the Does had enrolled David at Franklin Academy. See A.R. I: 238. Moreover, Plaintiffs argued that the 45-day assessment program would have been "detrimental" because it would have "required Parents to pull their emotionally fragile student out of a brand new school, enroll him in a different school for 8 weeks, and then transferring him to a third school after that." A.R. I: 238-39 (emphasis in original).

On August 9, 2019, the Hearing Officer issued a decision against the Does and in favor of Newton. She determined that the August 2017 IEP was the only proposal necessary to consider for 2017-2018, as "that was the [proposal] in effect at the time the unilateral placement was made." A.R. I: 271. She found the LINKS proposal to be appropriate on the basis that it would "provide Student the opportunity to attend academic classes and electives

with non-disabled peers while providing him with access to the therapeutic supports he required." A.R. I: 272. According to the Hearing Officer, at the time of the IEP's formulation, Newton had not been aware of any recommendations requiring a residential placement. The Hearing Officer found that, "based upon the information then available to the Team, the August 2017 IEP was reasonably calculated" to provide David a FAPE, and the Does' claim for reimbursement therefore failed. Id. Given this determination, the Hearing Officer also stated that "[i]t is thus unnecessary to make any determinations relative to the" 45-day assessment proposal. Id. She then went on to find that the IEPs proposed in 2018-2019 were also reasonably calculated to provide a FAPE.

The Does filed this suit on November 7, 2019, arguing that the Hearing Officer erred by "[c]oncluding that the full inclusion IEP and placement proposed on or about August 31, 2017 offered David a FAPE" and "[p]lacing undue weight on information about the LINKs program and about NNHS measures for students with suicidal intent that was provided at hearing but was unavailable to the parents at the time when they had to decide about Newton's proposed program and placement under the IEP generated after the August 31, 2017 Team meeting." Dkt. 1 at 21-22.

On April 20, 2020, the Does filed the present Motion for Leave to Submit Additional Evidence, seeking to submit the following:

1. Wong's affidavit, and oral testimony if necessary, recounting the May 13, 2019 unrecorded hearing on the Doe's motion to compel; explaining why she withdrew said motion to compel; recounting the unrecorded conference on May 20, 2019; and explaining the prejudicial effect to the Does which resulted from the exclusion of the peer IEPs.

   a. Based on this affidavit, the Does additionally request that the Court order Newton to produce the redacted peer IEPs to the Does; allow the Does to submit any or all of those IEPs to the Court as additional evidence of the alleged inappropriateness of the LINKS program for David;  and allow the Does to submit an affidavit, and oral testimony if necessary, by one or more independent experts, including but not limited to Jason McCormick, Psy.D. (who evaluated David in 2018 and testified at the hearing), regarding the inappropriateness of Newton's proposed 2017-2018 program in light of the peer IEPs;

2. The complete July 6, 2017 letter to the Lurie Center; and

3. The Newton 2017-2018 school calendar and the NNHS 2017-2018 daily and weekly block schedule.

Dkt. 35-36.

**LEGAL FRAMEWORK**

## I.   The IDEA

Under the IDEA, federally funded states commit to providing "free appropriate public education" ("FAPE") to children with disabilities. 20 U.S.C. § 1400(d)(1)(A). A child with a disability is defined as a child:

> (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and
>
> (ii) who, by reason thereof, needs special education and related services.

Id. § 1401(3)(A). A FAPE consists of "'special education and related services'-— both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 748-49 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)).

### A. Individualized Education Programs

A FAPE is typically executed via the implementation of an IEP, which is a "comprehensive plan[] that [is] developed by the child's IEP Team (which includes teachers, school officials, and the child's parents) and that must be drafted in compliance with a detailed set of procedures." C.D. by & through M.D. and P.D. v. Natick Pub. Sch. Dist., 924 F.3d 621, 624 (1st Cir. 2019) (citation omitted). "[T]he services offered in an IEP amount to a FAPE if they are reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Id. at 624-25 (citation omitted).

Under the IDEA, education must be provided in the "[l]east restrictive environment" appropriate for each child. 20 U.S.C. § 1412(a)(5). This provision "requires that children with disabilities receive education in the regular classroom whenever possible." C.D., 924 F.3d at 625 (citations omitted). However, this is not an absolute mandate, as "the desirability of mainstreaming must be weighed in concert with the Act's mandate for educational improvement." Id. (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 993 (1st Cir. 1990)).

If parents enroll their child with a disability in a private school without the consent of or referral by the public agency, "a court or hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii).

**B. Judicial Review under the IDEA**

Under the IDEA, if a party disagrees with a child's FAPE, the party may bring a complaint and receive an "impartial due process hearing" conducted by "the State educational agency or by the local educational agency." 20 U.S.C. § 1415(f)(1)(A). The hearing officer's decision may then be subject to judicial review. Id. § 1415(i)(2).

"Judicial review of administrative decisions in IDEA cases 'requires a more critical appraisal . . . than clear-error review,' but 'nevertheless, falls well short of complete de novo review.'" Doe v. Cape Elizabeth Sch. Dist., 832 F.3d 69, 82 (1st Cir. 2016) (quoting Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993)). Courts must make "bounded, independent decisions -- bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." Id. (quoting Town of Burlington v. Dep't of Educ. for Commonwealth of Mass., 736 F.2d 773, 791 (1st Cir. 1984)). As such, a district court plays an intermediate role which has been characterized as "involved oversight," S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir. 2014) (citation omitted), or "conducting a review proceeding," David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 424 (1st Cir. 1985).

**C. Additional Evidence under the IDEA**

The IDEA states that a reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

Generally, a party seeking to introduce additional evidence before the court "must provide some solid justification for doing so . . . . In the absence of special circumstances, courts should ordinarily exercise [their] discretion in favor of excluding the belatedly offered evidence." Roland M., 910 F.2d at 996-97. "The determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." Burlington, 736 F.2d at 791. In providing additional evidence, witnesses at trial may not "repeat or embellish their prior administrative hearing testimony"; rather, the additional evidence should act as supplementation to the administrative record. Id. at 790. "The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding." Id.

As this list is not exhaustive, in making its determination regarding additional evidence, a court should examine the administrative record and "weigh heavily the important concerns

of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." Roland M., 910 F.2d at 996 (quoting Burlington, 736 F.2d at 791).

**DISCUSSION**

### I.  **Wong Affidavit**

The Does seek to supplement the record with Attorney Wong's affidavit on the ground there is no transcript of the hearing on the motion to compel production of the IEPs of students in the LINKS program. This gap-filler is akin to the kind of evidence permitted by Burlington. See 736 F.2d at 790 ("The reasons for supplementation . . . might include gaps in the administrative transcript owing to mechanical failure."). Accordingly, the Court allows this request to supplement with Attorney Wong's testimony regarding statements made during the hearing.

However, the Court will not consider evidence concerning Attorney Wong's state of mind. Several portions of the affidavit reflect Attorney Wong's motivations or interpretations of the statements of others. See, e.g., Dkt. 37 ¶ 23 ("My thinking was that . . . I did not want to alienate the hearing officer."). Those statements do not fill gaps within the administrative record, but rather attempt to characterize the existing record.

## II.   __Peer IEPs__

Through their new attorney, the Does also argue they should be allowed to supplement the record with the IEPs of students who would have been David's peers in the LINKS program. Previous counsel had withdrawn her motion to compel the production of these peer IEPs in a written email sent after the May 13, 2019 hearing. Attorney Wong's first rationale is that she withdrew the motion rather than risk denial by the Hearing Officer. This explanation strains credulity, however, as counsel was an experienced litigator who certainly knew that she would not preserve the issue by withdrawing the motion.

Alternatively, Attorney Wong attests that she withdrew the motion based on the Hearing Officer's "unequivocal[]" indication that "she viewed the proposed 45-day assessment, and not NNHS/Links program, as the relevant program for hearing, for all but the first few days of the 2017-2018 school year." Dkt. 37 ¶ 26. Counsel for Newton, who was present at the May 13, 2019 hearing, contested Attorney Wong's assertion at this Court's hearing but has not submitted an affidavit to that effect. More importantly, the administrative record itself does not support Attorney Wong's account of the May 13, 2019 motion hearing. In the days and weeks following the hearing, none of the parties identified the 45-day assessment proposal as the only relevant program. Newton's May 17, 2019 proposed statement of issues and

the Hearing Officer's statement of issues at the start of the administrative proceeding both framed the hearing as encompassing all of Newton's proposals for 2017-2018. This framing aligns with the Does' own admission that at the March 27, 2019 prehearing conference, the Hearing Officer stated that the "relevance of the Links program would be decided as a matter of fact at the [final] hearing." A.R. I: 62 (Does' motion to compel).

Defendants argue that submission of peer IEPs should not be allowed where counsel made a strategic decision not to seek to introduce evidence during the administrative proceeding. Even if Plaintiffs' previous counsel misunderstood the Hearing Officer at the May 13, 2019 hearing, she was not foreclosed from raising the peer group issue once she understood the scope of the hearing. The First Circuit has ruled that courts should "refuse to reduce the [administrative proceedings] to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial de novo." Roland, M. 910 F. 2d at 997; see also I.M. ex rel. C.C. v. Northampton Pub. Sch., 858 F. Supp. 2d 132, 133, 136 (D. Mass. 2012) (finding that plaintiffs had "waived their opportunity to include [emails] in the record," where plaintiffs failed to request those emails during discovery at the administrative level); Roe v. Town of Westford, 110 F.R.D. 380, 382 (D. Mass. 1986)

(explaining that plaintiffs could not submit documents such as peer IEPs to the district court if they did not attempt to introduce those documents at the administrative hearing). When the Does decided not to pursue production of the peer IEPs at the administrative level, they "waived their opportunity" to include those documents in the record before this Court. I.M., 858 F. Supp. 2d at 133.[1]

### III. **Lurie Center Letter of July 6, 2017**

The Does have requested that the entire July 6, 2017 letter to the Lurie Center be admitted as additional evidence, as only excerpts were read into the record during the administrative proceeding. To avoid prejudice to the Plaintiffs, the Court will allow admission of portions of the letter that, consistent with the doctrine of completeness, "in fairness ought to be considered" alongside those portions read during the BSEA hearing. Cf. Fed. R. Evid. 106. Going forward, arguments relying on the Lurie Center letter must be accompanied by an explanation of why the cited portion of the letter meets this standard.

---

[1] This Court has not had the opportunity to scrutinize the voluminous administrative record at this preliminary stage of the proceedings. This Order does not determine whether the absence of the LINKS peer IEPs in the administrative record might ultimately support reversal or remand of this case to the BSEA.

## IV.   **Calendar and Schedules**

All parties have agreed to the admission of the 2017-2018 Newton Public Schools Calendar and the 2017-2018 NNHS daily and weekly block schedule. As such, the Court allows the admission of these documents as additional evidence.

### ORDER

For the reasons stated above, the Court **ALLOWS** the admission of Attorney Wong's affidavit only insofar as it recounts statements at unrecorded hearings; **DENIES** the admission of the peer IEPs and related expert testimony; **ALLOWS** the admission of portions of the Lurie Center letter only to the extent consistent with the doctrine of completeness; and **ALLOWS** the admission of the 2017-2018 Newton Public Schools Calendar and the 2017-2018 NNHS daily and weekly block schedule.


SO ORDERED.


/s/ Patti B. Saris
Patti B. Saris
United States District Judge